UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

CARLOS GARZA,                    §
TDCJ No. 1268102,                §
                                 §
          Petitioner,            §
                                 §
V.                               §    CIVIL NO. SA-07-CA-182-NN
                                 §
NATHANIEL A. QUARTERMAN,         §
Director,                        §
Texas Department of Criminal     §
Justice, Correctional            §
Institutions Division,           §
                                 §
          Respondent.            §

## MEMORANDUM OPINION AND ORDER

     Petitioner Carlos Garza filed this federal habeas corpus
action pursuant to Title 28 U.S.C. Section 2254 seeking to
collaterally attack his April, 2004, Bexar County criminal
conviction for murder.  The parties have consented to proceed
before the undersigned Magistrate Judge.  For the reasons set
forth below, all relief requested in petitioner's federal habeas
corpus petition is denied and petitioner is denied a Certificate
of Appealability.

## I. Statement of the Case

A.   The Offense

     There is no genuine doubt that(1) on the evening of November
14, 2002, while visiting the Regency Manor Apartment complex in
San Antonio, Texas, petitioner became involved in a verbal
confrontation with Ron Villarreal and Ron's brother Rick Sanchez

and (2) at the conclusion of that confrontation, petitioner pulled out a handgun and fatally shot both Villarreal and Sanchez.  Petitioner testified to these very facts during his trial.[1]

However, there was considerable dispute among the witnesses who testified during petitioner's trial concerning the precise details surrounding the fatal shootings.  Petitioner claimed (1) he had been involved in a physical altercation with the two victims several weeks before the fatal shootings, (2) for that reason he purchased a firearm and carried it with him the night of the fatal shootings, (3) on the night of the shootings, as he and three of his friends attempted to leave the apartment complex, the two victims followed behind, crudely calling out to petitioner, and issuing insulting challenges, (4) he reached the parking lot but turned back and walked toward the two victims because they were approaching one of petitioner's companions in a menacing manner, (5) he feared the victims might harm himself or his friend, (6) when the petitioner saw one of the victims reach for something he presumed to be a weapon, he drew his weapon, fired several shots at one victim, then fired at the other victim, (7) he then turned, ran to his vehicle, and drove to his mother's home, and (8) he later disposed of his handgun by

---

[1] Statement of facts from petitioner's trial (henceforth "S.F. Trial"), Volume 7, testimony of Carlos Garza, at pp. 12, 18-25, 27, 29, 31-35, 40, 42, 44, 47-48, 57, 60-63.

throwing it in a dumpster after he received a telephone call from a police officer.[2]

In contrast, a variety of prosecution witnesses testified (1) petitioner and his companions engaged in an extended, *two-sided*, verbal altercation with the two victims before the fatal shootings,[3] (2) the two victims were members of the "Crips" street gang while petitioner was a member of the "Bloods" street gang,[4] (3) the previous altercation between petitioner and the victims several weeks before the fatal shootings had been over petitioner's display of "Bloods" colors, i.e., red, during a visit to the Regency Manor Apartments,[5] (4) at the time the petitioner drew his handgun and began firing, the two victims (a) had stopped their advance toward petitioner and his companions, (b) were at least three-to-four feet away from the petitioner and his companions, (c) had not assaulted or otherwise harmed the petitioner or his companions, and (d) had turned their backs to

---

[2] *Id.*, at pp. 6, 9-11, 17-20, 25, 27, 29, 31-35, 40, 42, 44, 48, 51-52, 57, 61-65, 67-69, 87-88, 98-99.

[3] S.F. Trial, Volume 4, testimony of Johnny Moore, at pp. 67-70, 91; testimony of Roxanne Fernandez, at pp. 230-33, 236-40, 270, 273, 275; Volume 5, testimony of Gerald Gonzales, at pp. 20-28.

[4] S.F. Trial, Volume 4, testimony of Ashley Murakami, at pp. 139-40, 171-74, 201-02, 204, 214-15; testimony of Roxanne Fernandez, at pp. 267-68; Volume 5, testimony of Gerald Gonzales, at pp. 11-13, 70.

[5] S.F. Trial, Volume 5, testimony of Gerald Gonzalez, at p. 13.

petitioner and were attempting to flee the scene,[6] (5) the "Crips" and the "Bloods" did not get along,[7] and (6) petitioner has a "CK" tattoo which he explained stands for "Crip Killer."[8]

B.   Indictment

On February 5, 2003, a Bexar County grand jury indicted petitioner in cause no. 2003-CR-0873 on a charge of capital murder, to wit, intentionally causing the deaths of Rick Sanchez and Ronald Villarreal by fatally shooting both victims during the same criminal transaction.[9]

---

[6] S.F. Trial, Volume 5, testimony of Gerald Gonzalez, at pp. 28-36, 39-40, 48, 51, 86, 91, 101, 106-08.

One prosecution witness testified she watched the petitioner draw his handgun fifteen seconds before she heard petitioner fire any shots. S.F. Trial, Volume 4, testimony of Roxanne Fernandez, at p. 243, 277.

[7] S.F. Trial, Volume 5, testimony of Gerald Gonzalez, at p. 70.

Petitioner confirmed this fat himself when he testified (1) "Crips" wear blue and "Bloods" wear red and (2) "the color red don't get along with the color blue." S.F. Trial, Volume 7, testimony of Carlos Garza, at pp. 89-90.

[8] S.F. Trial, Volume 7, testimony of Carlos Garza, at pp. 92-94.

A San Antonio Police officer assigned to the gang detail testified (1) "Crips" are blue and "Bloods" are red, (2) "CK" stands for "Crip Killer," and (3) the number "187" stands for "murder." S.F. Trial, Volume 5, testimony of Darrell Volkmann, at pp. 217-20; Volume 6, testimony of Darrell Volkmann, at pp. 31, 35.

[9] A copy of the indictment against petitioner appears among the records relating to petitioner's state habeas corpus proceeding, i.e., App. no. 66,107-01 (henceforth "State Habeas Transcript"), submitted to this Court by respondent, at p. 48.

Another copy of the indictment against petitioner appears

4

C.   Guilt-Innocence Phase of Trial

       The guilt-innocence phase of petitioner's trial commenced on
April 6, 2004.

       In addition to the evidence summarized above, petitioner's
jury heard testimony (1) establishing both victims were wearing
blue shorts at the time of their death,[10] (2) all five of the
bullets recovered from the bodies of the victims and from various
locations at the crime scene were fired by the same weapon,[11] (3)
Rick Sanchez sustained two gunshot wounds to his back, neither of
which displayed signs of close-range firing,[12] (4) one of the
bullets which struck Rick Sanchez, and caused non-fatal injuries,
entered his lower back, traveled horizontally, struck his pelvis
and small bowel, and lodged in his abdominal wall,[13] (5) the
fatal bullet which struck Rick Sanchez entered his left side in
the abdominal region and traveled steeply upward through the
diaphragm, through the left lung and heart, and lodged in the

---

among the pleadings, motions, and other documents filed in
petitioner's state trial court proceedings (henceforth "Trial
Transcript"), Volume 1, at p. 35.

       [10] S.F. Trial, Volume 5, testimony of Elizabeth Rocha, at p.
179.

       [11] S.F. Trial, Volume 6, testimony of Edard Love, Jr., at
pp. 89-91.

       [12] S.F. Trial, Volume 6, testimony of Randall Frost, at pp.
107-08, 111-12, 114.

       [13] *Id.*, at pp. 107-09.

chest wall,[14] (6) Ronald Villarreal also sustained a pair of gunshot wounds, neither of which showed signs of close-range firing,[15] (7) one of the bullets which struck Ronald Villarreal, and caused only non-fatal injuries, completely transected his left forearm, entering the back of the forearm, fracturing one bone, and then exiting through the front of his left forearm,[16] (8) the fatal bullet which struck Ronald Villarreal entered the center of his back, passed through his left lung and the left ventricle of his heart before exiting the front of his chest near the left nipple,[17] and (9) a set of brass knuckles was discovered inside Ronald Villarreal's right hand.[18]

On April 14, 2004, the state trial court submitted the case to petitioner's jury, instructing the jurors on the offense of capital murder, as well as the lesser-included offenses of murder, manslaughter, and deadly conduct.[19]

---

[14] *Id.*, at pp. 107-10, 114.

[15] *Id.*, at pp. 116-17.

[16] *Id.*, at p. 116.

[17] *Id.*, at pp. 116-18.

[18] S.F. Trial, Volume 5, testimony of Leroy Sanchez, at p. 122; testimony of Elizabeth Rocha, at pp. 174, 176.

[19] Trial Transcript, Volume 2, at pp. 386-409; S.F. Trial, Volume 8, at pp. 4-22.

On April 15, 2004, the jury returned its verdict, finding petitioner guilty of the lesser-included offense of murder.[20]

D. Punishment Phase of Trial

The punishment phase of petitioner's trial commenced on April 16, 2004. The jury heard testimony detailing (1) petitioner's juvenile criminal adjudications for possession of marijuana and unlawfully carrying a weapon,[21] (2) an incident on November 10, 2003 in which petitioner and another Bexar County Adult Detention Center inmate engaged in a confrontation which a riot squad was forced to quell,[22] (3) petitioner's arrest on September 6, 2002 arising from the burglary of a convenience store,[23] and (4) the November 15, 2002 search of petitioner's bedroom, which yielded a pair of sawed-off shotguns and ammunition for same.[24] The parties also stipulated on the record that petitioner had not been convicted of any felony offense

---

[20] Trial Transcript, Volume 2, at p. 410; S.F. Trial, Volume 9, at p. 4.

[21] S.F. Trial, Volume 10, testimony of Patty Gonzalez, at pp. 5-21.

[22] S.F. Trial, Volume 10, testimony of Rogelio Yzaguirre, 46-60, 67.

[23] S.F. Trial, Volume 10, testimony of Bryan Sullivan, at pp. 72-82; testimony of Bobby Bradley, at pp. 89-94; testimony of Danny Carter, at pp. 96-102.

[24] S.F. Trial, Volume 10, testimony of Jesse Contreras, at pp. 111-20.

prior to the date of petitioner's fatal shootings of Villarreal and Sanchez.[25]

On April 19, 2004, the jury returned its punishment-phase verdict and the state trial court imposed a sentence of twenty years imprisonment.[26]

E.   <u>Direct Appeal</u>

On January 10, 2005, petitioner filed his appellant's brief in which he urged four points of error, to wit, arguments that (1) the trial court erred in admitting photographs showing gang-related graffiti on petitioner's bedroom walls, (2) there was insufficient evidence to support petitioner's murder conviction, (3) the trial court's guilt-innocence phase jury instructions concerning self-defense contained errors, and (4) the trial court abused its discretion in denying petitioner's motion for mistrial following revelation to the jury at the punishment phase of petitioner's trial that petitioner's mother had once been charged with murder.  In an unpublished opinion issued August 24, 2005, the Texas Fourth Court of Appeals rejected all of petitioner's legal arguments and affirmed petitioner's conviction and sentence. *Garza v. State*, 2005 WL 2012290 (Tex. App. –– San Antonio, August 24, 2005, *pet. ref'd*).

---

[25] S.F. Trial, Volume 10, at pp. 121-22.

[26] S.F. Trial, Volume 11, at pp. 30-32.

On September 26, 2005, petitioner filed his petition for
discretionary review in which he urged only one of the arguments
he had earlier presented on direct appeal.  More specifically,
petitioner argued only that the trial court erred when it
instructed petitioner's jury regarding the limitation on the
availability of self-defense provided by Section 9.31(b)(5) of
the Texas Penal Code (which addresses persons who unlawfully
carry a firearm into a verbal confrontation with others).  On
December 14, 2005, the Texas Court of Criminal Appeals refused
petitioner's petition for discretionary review.

Petitioner thereafter sought no further review of his
conviction or sentence from the United States Supreme Court.

F.    State Habeas Corpus Proceeding

On July 24, 2006, petitioner's filed a *pro se* application
for state habeas corpus relief, in which he urged three claims
for relief.[27]  More specifically, petitioner argued his trial
counsel rendered ineffective assistance in connection with
petitioner's trial by failing to (a) do an independent
investigation of the case against petitioner, (b) subpoena Gerald
Mata to testify regarding statements prosecution witness Gerald
Gonzalez had made to Mata days after the fatal shootings, and (c)
present a defense at trial because of a "conflict of interest"

---

[27] Transcript of pleadings, motions, and other documents
filed in petitioner's state habeas corpus proceeding, (henceforth
"State Habeas Transcript"), at pp. 1-47.

between petitioner and his lead trial counsel.  In an Order issued October 5, 2006, the state trial court issued its findings of fact, conclusions of law, and recommendation that state habeas relief be denied.[28]

On November 1, 2006, the Texas Court of Criminal Appeals denied petitioner's state habeas corpus application without written order based on the trial court's findings made without an evidentiary hearing. *Ex parte Carlos Garza*, App. no. WR-66,107-01 (Tex. Crim. App. November 1, 2006).

G.   Federal Habeas Proceeding

On February 26, 2004, petitioner executed a *pro se* federal habeas corpus petition and an application for leave to proceed *in forma pauperis*, which this Court received on April 10, 2007. *Docket entry no. 4.*  On May 10, 2007, respondent filed an answer in which he argued, in pertinent part, that petitioner's federal habeas corpus petition was time-barred under applicable federal law. *Docket entry no. 8.*

## II. AEDPA Standard of Review

Because petitioner filed his federal habeas corpus action after the effective date of the AEDPA, this Court's review of petitioner's claims for federal habeas corpus relief is governed by the AEDPA. *Penry v. Johnson*, 532 U.S. 782, 792, 121 S.Ct. 1910, 1918, 150 L.Ed.2d 9 (2001).  Under the AEDPA standard of

---

[28] State Habeas Transcript, at pp. 116-21.

review, this Court cannot grant petitioner federal habeas corpus relief in this cause in connection with any claim that was adjudicated on the merits in state court proceedings, unless the adjudication of that claim either: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *Brown v. Payton*, 544 U.S. 133, 141, 125 S.Ct. 1438, 161 l.Ed.2d 334 (2005); *Williams v. Taylor*, 529 U.S. 362, 404-05, 120 S.Ct. 1495, 1519, 146 L.Ed.2d 389 (2000); 28 U.S.C. § 2254(d).

The Supreme Court has concluded the "contrary to" and "unreasonable application" clauses of Title 28 U.S.C. Section 2254(d)(1) have independent meanings. *Bell v. Cone*, 535 U.S. 685, 694, 122 S.Ct. 1843, 1850, 152 L.Ed.2d 914 (2002).  Under the "contrary to" clause, a federal habeas court may grant relief if (1) the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or (2) the state court decides a case differently than the Supreme Court on a set of materially indistinguishable facts. *Brown v. Payton*, 544 U.S. at 141, 125 S.Ct. at 1438; *Mitchell v. Esparza*, 540 U.S. 12, 15-16, 124 S.Ct. 7, 10, 157 L.Ed.2d 263 (2003)("A state court's decision is 'contrary to' our clearly established law if it

11

'applies a rule that contradicts the governing law set forth in our cases' or it 'confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent.'"). A state court's failure to cite governing Supreme Court authority does not, *per se*, establish the state court's decision is "contrary to" clearly established federal law: "the state court need not even be aware of our precedents, 'so long as neither the reasoning nor the result of the state-court decisions contradicts them.'" *Mitchell v. Esparza*, 540 U.S. at 16, 124 S.Ct. at 10.

Under the "unreasonable application" clause, a federal habeas court may grant relief if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the petitioner's case. *Brown v. Payton*, 544 U.S. at 141, 125 S.Ct. at 1439; *Wiggins v. Smith*, 539 U.S. 510, 520, 123 S.Ct. 2527, 2534-35, 156 L.Ed.2d 471 (2003). A federal court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." *Wiggins v. Smith*, 539 U.S. at 520-21, 123 S.Ct. at 2535. The focus of this inquiry is on whether the state court's application of clearly established federal law was objectively unreasonable; an "unreasonable" application is different from a merely "incorrect" one. *Schriro v. Landrigan*,

___ U.S. ___, ___, 127 S.Ct. 1933, 1939, 167 L.Ed.2d 836 (2007)("The question under the AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable - a substantially higher threshold."); *Wiggins v. Smith*, 539 U.S. at 520, 123 S.Ct. at 2535; *Price v. Vincent*, 538 U.S. 634, 641, 123 S.Ct. 1848, 1853, 155 L.Ed.2d 877 (2003)("it is the habeas applicant's burden to show that the state court applied that case to the facts of his case in an objectively unreasonable manner").

Legal principles are "clearly established" for purposes of AEDPA review when the holdings, as opposed to the dicta, of Supreme Court decisions as of the time of the relevant state-court decision establish those principles. *Yarborough v. Alvarado*, 541 U.S. 652, 660-61, 124 S.Ct. 2140, 2147, 158 L.Ed.2d 938 (2004)("We look for 'the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision.'"); *Lockyer v. Andrade*, 538 U.S. 63, 71-72, 123 S.Ct. 1166, 1172, 155 L.Ed.2d 144 (2003).

The AEDPA also significantly restricts the scope of federal habeas review of state court fact findings.  A petitioner challenging state court factual findings must establish by clear and convincing evidence that the state court's findings were erroneous. *Schriro v. Landrigan*, ___ U.S. at ___, 127 S.Ct. at 1939-40 ("AEDPA also requires federal habeas courts to presume

the correctness of state courts' factual findings unless applicants rebut this presumption with 'clear and convincing evidence.'"); *Rice v. Collins*, 546 U.S. 333, ___ , 126 S.Ct. 969, 974, 163 L.Ed.2d 824 (2006)("State-court factual findings, moreover, are presumed correct; the petitioner has the burden of rebutting the presumption by 'clear and convincing evidence.'"); *Miller-El v. Dretke*. 545 U.S. 231, 240, 125 S.Ct. 2317, 2325, 162 L.Ed.2d 196 (2005)("we presume the Texas court's factual findings to be sound unless Miller-El rebuts the 'presumption of correctness by clear and convincing evidence.'"); 28 U.S.C. §2254(e)(1).

However, the deference to which state-court factual findings are entitled under the AEDPA does not imply an abandonment or abdication of federal judicial review. *See Miller-El v. Dretke*, 545 U.S. at 240, 125 S.Ct. at 2325 (the standard is "demanding but not insatiable"); *Miller-El v. Cockrell*, 537 U.S. 322, 340, 123 S.Ct. 1029, 1041, 154 L.Ed.2d 931 (2003)("Even in the context of federal habeas, deference does not imply abandonment or abdication of judicial review.  Deference does not by definition preclude relief.").

Finally, in this Circuit, a federal habeas court reviewing a state court's rejection on the merits of a claim for relief pursuant to the AEDPA must focus exclusively on the propriety of the ultimate decision reached by the state court and not evaluate

the quality, or lack thereof, of the state court's written opinion supporting its decision. *See St. Aubin v. Quarterman*, 470 F.3d 1096, 1100 (5th Cir. 2006)(holding Section 2254(d) permits a federal habeas court to review only a state court's decision and not the written opinion explaining that decision), *cert. denied*, ___ U.S. ___, 127 S.Ct. 2133, 167 L.Ed.2d 869 (2007); *Amador v. Quarterman*, 458 F.3d 397, 410 (5th Cir. 2006)(holding the same), *cert. denied*, ___ U.S. ___, 127 S.Ct. 2129, 167 L.Ed.2d 866 (2007); *Pondexter v. Dretke*, 346 F.3d 142, 148 (5th Cir. 2003)(holding the precise question before a federal habeas court in reviewing a state court's rejection on the merits of an ineffective assistance claim is whether the state court's ultimate conclusion was objectively reasonable), *cert. denied*, 541 U.S. 1045 (2004); *Anderson v. Johnson*, 338 F.3d 382, 390 (5th Cir. 2003)(holding a federal habeas court reviews only a state court's decision and not the opinion explaining that decision); *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002)(*en banc*)(holding a federal court is authorized by §2254(d) to review only a state court's decision and not the written opinion explaining that decision), *cert. denied*, 537 U.S. 1104 (2003).

### III. <u>Insufficient Evidence Claim</u>

A.   <u>The Claim</u>

In his first claim for relief herein, petitioner argues there was insufficient evidence to support the jury's verdict finding petitioner guilty of murder.[29]

B.   <u>State Court Disposition</u>

Petitioner presented a point of error in his appellant's brief arguing there was insufficient evidence to support the jury's verdict of guilty on the charge of ordinary, non-capital, murder.  The Texas Fourth Court of Appeals, citing the Supreme Court's opinion in *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979), denied relief on the merits, concluding the jury could rationally have concluded petitioner's shooting of the brass-knuckle-totting Villarreal was justified by a self-defense theory but that petitioner's fatal back-shooting of the unarmed Sanchez was not justified. *Garza v. State*, 2007 WL 2012290, *3-*5 (Tex. App. -- San Antonio, August 24, 2005, *pet. ref'd*).  Significantly, however, petitioner did

---

[29] Petitioner's petition for habeas corpus relief, filed April 10, 2007, docket entry no. 4 (henceforth "*Petition*"), at pp. 7.  Petitioner also filed a *pro se* memorandum in support of his federal habeas corpus petition in which petitioner fleshed out the factual bases underlying his claims herein.  In his memorandum, petitioner argues the evidence at his trial established as a matter of law that his fatal shootings of Villarreal and Sanchez was fully justified based on petitioner's subjective fear for his own safety as well as the safety of his companions.

*not* include a challenge to the intermediate Texas appellate court's ruling on his insufficient evidence point of error in his petition for discretionary review.  Petitioner did not re-urge his insufficient evidence complaint in his state habeas corpus application.  Thus, petitioner failed to "fairly present" the Texas Court of Criminal Appeals with his insufficient evidence complaint.

C.   Procedural Default on Unexhausted Claim

Respondent correctly points out that petitioner failed to exhaust available state court remedies on his insufficient evidence claims and, as a result, petitioner has procedurally defaulted on same in this Court.

1.   The Exhaustion Requirement

A state prisoner must exhaust available state remedies, thereby giving the State the opportunity to pass upon and correct alleged violations of its prisoners' *federal* rights. *Baldwin v. Reese*, 541 U.S. 27, 29, 124 S.Ct. 1347, 1349, 158 L.Ed.2d 64 (2004); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842, 119 S.Ct. 1728, 1731, 144 L.Ed.2d 1 (1999); *Duncan v. Henry*, 513 U.S. 364, 365, 115 S.Ct. 887, 888, 130 L.Ed.2d 865 (1995); *Picard v. Connor*, 404 U.S. 270, 275, 92 S.Ct. 509, 512, 30 L.Ed.2d 438 (1971); 28 U.S.C. §2254(b)(1).  To provide the State with this necessary "opportunity," the prisoner must "fairly present" his claim to the appropriate state court in a manner that alerts that

17

court to the *federal* nature of the claim. *See Baldwin v. Reese*, 541 U.S. at 29-33, 124 S.Ct. at 1349-51 (rejecting the argument that a petitioner "fairly presents" a federal claim, despite failing to give any indication in his appellate brief of the federal nature of the claim through reference to any federal source of law, when the state appellate court could have discerned the federal nature of the claim through review of the lower state court opinion); *O'Sullivan v. Boerckel*, 526 U.S. at 844-45, 119 S.Ct. at 1732-33 (holding comity requires that a state prisoner present the state courts with the first opportunity to review a federal claim by invoking one complete round of that State's established appellate review process); *Gray v. Netherland*, 518 U.S. 152, 162-63, 116 S.Ct. 2074, 2081, 135 L.Ed.2d 457 (1996) (holding that, for purposes of exhausting state remedies, a claim for *federal* relief must include reference to a specific constitutional guarantee, as well as a statement of facts that entitle the petitioner to relief and rejecting the contention that the exhaustion requirement is satisfied by presenting the state courts only with the facts necessary to state a claim for relief).  The exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts and, thereby, to protect the state courts' role in the enforcement of federal law and prevent disruption of

state judicial proceedings. *Carey v. Saffold*, 536 U.S. 214, 220, 122 S.Ct. 2134, 2138, 153 L.Ed.2d 260 (2002); *Duncan v. Walker*, 533 U.S. 167, 179, 121 S.Ct. 2120, 2128, 150 L.Ed.2d 251 (2001); *O'Sullivan v. Boerckel*, 526 U.S. at 845, 119 S.Ct. at 1732; *Rose v. Lundy*, 455 U.S. 509, 518-19, 102 S.Ct. 1198, 1203, 71 L.Ed.2d 379 (1982).

The exhaustion requirement is satisfied when the substance of the *federal* habeas claim has been "fairly presented" to the highest state court with jurisdiction over the claim, i.e., the petitioner presents his claims before the state courts in a procedurally proper manner according to the rules of the state courts. *Baldwin v. Reese*, 541 U.S. at 29-33, 124 S.Ct. at 1349-51 (holding a petitioner failed to "fairly present" a claim of ineffective assistance by his state appellate counsel merely by labeling the performance of said counsel "ineffective," without accompanying that label with either a reference to *federal* law or a citation to an opinion applying *federal* law to such a claim). The exhaustion requirement is not met if the petitioner presents new legal theories or factual claims in his federal habeas petition. *Anderson v. Harless*, 459 U.S. 4, 6-7, 103 S.Ct. 276, 277-78, 74 L.Ed.2d 3 (1982); *Riley v. Cockrell*, 339 F.3d 308, 318 (5th Cir. 2003)("It is not enough that the facts applicable to the federal claims were all before the State court, or that the petitioner made a similar state-law based claim.  The federal

claim must be the 'substantial equivalent' of the claim brought before the State court."), *cert. denied*, 543 U.S. 1056 (2005); *Wilder v. Cockrell*, 274 F.3d 255, 259 (5th Cir. 2001)("where petitioner advances in federal court an argument based on a legal theory distinct from that relied upon in the state court, he fails to satisfy the exhaustion requirement").  To have "fairly presented" his *federal* claim, the petitioner must have reasonably alerted the state courts to the *federal* nature of his complaint. *Baldwin v. Reese*, 541 U.S. at 29-33, 124 S.Ct. at 1349-51; *Wilder v. Cockrell*, 274 F.3d at 260 ("A fleeting reference to the federal constitution, tacked onto the end of a lengthy, purely state-law evidentiary argument, does not sufficiently alert and afford a state court the opportunity to address an alleged violation of federal rights."); *Shute v. State of Texas*, 117 F.3d 233, 237 (5th Cir. 1997)("a habeas petitioner 'must fairly apprize the highest court of his state of the federal rights which were allegedly violated.'").  In Texas, the highest state court with jurisdiction to review the validity of a state criminal conviction is the Texas Court of Criminal Appeals. *Richardson v. Procunier*, 762 F.2d 429, 431-32 (5th Cir. 1985).

Respondent correctly points out that petitioner's insufficient evidence claim has never been presented to the Texas Court of Criminal Appeals.  Thus, this claim has not previously been "fairly presented' to the highest state court with

jurisdiction over same.  While petitioner did urge a host of
claims in his appellant's brief submitted on direct appeal to the
Texas Fourth Court of Appeals, for unknown reasons, petitioner
chose *not* to include his insufficient evidence claim in his
petition for discretionary review filed with the Texas Court of
Criminal Appeals.

2.   <u>Procedural Default Principles</u>

Procedural default occurs where (1) a state court clearly
and expressly bases its dismissal of a claim on a state
procedural rule, and that procedural rule provides an independent
and adequate ground for the dismissal, or (2) the petitioner
fails to exhaust all available state remedies, and the state
court to which he would be required to petition would now find
the claims procedurally barred. *Coleman v. Thompson*, 501 U.S.
722, 735 n.1, 111 S.Ct. 2546, 2557 n.1, 115 L.Ed.2d 640 (1991).
In either instance, the petitioner is deemed to have forfeited
his federal habeas claim. *O'Sullivan v. Boerckel*, 526 U.S. 838,
848, 119 S.Ct. 1728, 1734, 144 L.Ed.2d 1 (1999).  Procedural
defaults only bar federal habeas review when the state procedural
rule which forms the basis for the procedural default was "firmly
established and regularly followed" by the time it was applied to
preclude state judicial review of the merits of a federal
constitutional claim. *Ford v. Georgia*, 498 U.S. 411, 424, 111
S.Ct. 850, 857-58, 112 L.Ed.2d 935 (1991).

The Supreme Court has recognized exceptions to the doctrine of procedural default where a federal habeas corpus petitioner can show "cause and actual prejudice" for his default or that failure to address the merits of his procedurally defaulted claim will work a "fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. at 750, 109 S.Ct. at 2565; *Harris v. Reed*, 489 U.S. 255, 262, 109 S.Ct. 1038, 1043, 103 L.Ed.2d 308 (1989). To establish "cause," a petitioner must show either that some objective external factor impeded the defense counsel's ability to comply with the state's procedural rules or that the petitioner's trial or appellate counsel rendered ineffective assistance. *Coleman v. Thompson*, 501 U.S. at 753, 111 S.Ct. at 2566; *Murray v. Carrier*, 477 U.S. 478, 488, 106 S.Ct. 2639, 2645, 91 L.Ed.2d 397 (1986) (holding proof of ineffective assistance by counsel satisfies the "cause" prong of the exception to the procedural default doctrine).

In order to satisfy the "miscarriage of justice" test, the petitioner must supplement his constitutional claim with a colorable showing of factual innocence. *Sawyer v. Whitley*, 505 U.S. 333, 335-36, 112 S.Ct. 2514, 2519, 120 L.Ed.2d 269 (1992). To satisfy the "factual innocence" standard, a petitioner must establish a fair probability that, considering all of the evidence now available, the trier of fact would have entertained a reasonable doubt as to the defendant's guilt. *See Sawyer v.*

*Whitley*, 505 U.S. at 335-40, 112 S.Ct. at 2517-19, (holding that to show "actual innocence" in the context of a capital sentencing scheme, one must show by clear and convincing evidence that, but for the constitutional error, no reasonable juror would have found the petitioner eligible for the death penalty under the applicable state statute and that "factual innocence" means a fair probability that, in light of all the evidence, the trier of the facts would have entertained a reasonable doubt as to the defendant's guilt).  In other words, to satisfy the "factual innocence" standard, a petitioner must establish a fair probability that, considering all of the evidence now available, the trier of fact would have entertained a reasonable doubt as to the defendant's guilt. *Id.*  The "factual innocence" test, therefore, requires the Court to give consideration to the all of the evidence now available to the Court on the issue of the petitioner's guilt or innocence.  The defendant must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him. *Bousley v. United States*, 523 U.S. 614, 623, 118 S.Ct. 1604, 1611, 140 L.Ed.2d 828 (1998).

    3.   Synthesis

    In the course of his direct appeal, petitioner "fairly presented" the Texas Court of Criminal Appeals with only a single complaint, i.e., petitioner's claim that the state trial court's

guilt-innocence phase jury instructions erroneously restricted the scope of self-defense in conformity with Section 9.31(b)(5) of the Texas Penal Code.  Petitioner included no mention of his insufficient evidence complaint in his state habeas corpus application.

The Fifth Circuit has consistently held federal habeas review on unexhausted claims presented by a convicted Texas criminal defendant is barred under the procedural default doctrine. *See Aguilar v. Dretke*, 428 F.3d 526, 533 (5th Cir. 2005)(holding the Texas abuse of the writ rule ordinarily is an adequate and independent procedural ground on which to base a procedural default ruling), *cert. denied*, ___ U.S. ___, 126 S.Ct. 2059, 164 L.Ed.2d 793 (2006); *Matchett v. Dretke*, 380 F.3d 844, 848 (5th Cir. 2004)(holding the violation of the Texas writ-abuse rule ordinarily furnishes an adequate and independent procedural ground which bars federal habeas review of a claim), *cert. denied*, 543 U.S. 1124 (2005); *Bagwell v. Dretke*, 372 F.3d 748, 755-56 (5th Cir. 2004)(holding a petitioner procedurally defaulted by failing to "fairly present" a claim to the state courts in his state habeas corpus application), *cert. denied*, 543 U.S. 989 (2004); *Cotton v. Cockrell*, 343 F.3d 746, 755 (5th Cir. 2003)(holding the Texas writ abuse doctrine is an adequate and independent barrier to federal habeas review of unexhausted claims), *cert. denied*, 540 U.S. 1186 (2004); *Henderson v.*

*Cockrell*, 333 F.3d 592, 605 (5th Cir. 2003(recognizing the Texas writ-abuse doctrine has been strictly and regularly applied since before August, 1997), *cert. denied*, 540 U.S. 1163 (2004); *Smith v. Cockrell*, 311 F.3d 661, 684 (5th Cir. 2002)(holding unexhausted claims were procedurally barred), *cert. dism'd*, 541 U.S. 913 (2004); *Jones v. Johnson*, 171 F.3d 270, 276-77 (5th Cir. 1999)(holding unexhausted ineffective assistance claim procedurally barred from federal habeas review), *cert. denied*, 527 U.S. 1059 (1999); *Muniz v. Johnson*, 132 F.3d 214, 221 (5th Cir. 1998)(holding unexhausted claims procedurally barred), *cert. denied*, 523 U.S. 1113 (1998); *Nobles v. Johnson*, 127 F.3d 409, 423 (5th Cir. 1997)(holding the Texas writ-abuse rule an adequate and independent barrier to federal habeas review of unexhausted claims), *cert. denied*, 523 U.S. 1139 (1998).

Section 5 of Article 11.071 of the Texas Code of Criminal procedure prohibits a successive state habeas corpus application except in limited circumstances which do not apply to petitioner's complaint about the violation of the presumption of innocence arising from the alleged vagueness of the first Texas capital sentencing special issue. *See* Art. 11.071, §5, Tex. Code Crim. Proc. Ann. (Vernon Supp. 2006)(barring consideration on the merits of new claims contained in a subsequent state habeas corpus application unless either (1) the new claims could not have been presented in a previous application because the legal

or factual basis for the new claims were unavailable at the time the previous application was filed; (2) by a preponderance of the evidence, but for a violation of the United States Constitution, no rational juror could have found the applicant guilty beyond a reasonable doubt; or (3) by clear and convincing evidence, but for a violation of the United States Constitution, no rational juror would have answered in the state's favor one or more of the capital sentencing special issues).  Absolutely nothing prevented petitioner from asserting his insufficient evidence claim in his petition for discretionary review.  Likewise, petitioner alleges no specific facts and presents no evidence to this Court which satisfies either of the final two exceptions to the Texas writ-abuse barrier erected by Section 5 of Article 11.071.  On the contrary, the evidence of petitioner's guilt was overwhelming.

Nothing in petitioner's petition for discretionary review or state habeas corpus application "fairly presented" the Texas Court of Criminal Appeals with the same *federal* constitutional arguments contained in petitioner's first claim for relief before this Court.  If petitioner were to attempt at this juncture to return to state court and assert his *federal* constitutional complaints about the insufficiency of the evidence supporting the jury's guilt-innocence phase verdict, the applicable provisions of the Texas writ-abuse statute, as well as well-settled state-law mandating the presentation of complaints of insufficient

evidence claims on direct appeal, would preclude him from doing
so.   Thus, petitioner failed to exhaust available state remedies
on his first claim herein and, thereby, procedurally defaulted on
same. *See Hughes v. Dretke*, 412 F.3d 582, 594-95 (5th Cir.
2005)(holding petitioner procedurally defaulted on a jury
misconduct claim by presenting the state courts with purely
state-law arguments supporting same and waiting until he reached
federal court to first urge federal constitutional arguments),
*cert. denied*, 546 U.S. 1177 (2006); *Beazley v. Johnson*, 242 F.3d
248, 264-68 (5th Cir. 2001)(holding petitioner procedurally
defaulted on a claim by failing to present same to the Texas
Court of Criminal Appeals either on direct appeal or in a state
habeas corpus application where claim was readily available at
the time petitioner filed his state habeas application), *cert.
denied*, 534 U.S. 945 (2001); *Hicks v. Johnson*, 186 F.3d 634, 637-
38 (5th Cir. 1999)(petitioner procedurally defaulted on an
unexhausted claim for relief), *cert. denied*, 528 U.S. 1132
(2000).   A Texas prisoner filing a federal habeas corpus petition
who failed to include a challenge to the sufficiency of the
evidence supporting his conviction in his direct appeal has
procedurally defaulted on that claim and is barred from obtaining
federal habeas review of same. *West v. Johnson*, 92 F.3d 1385,
1398 n.18 (5th Cir. 1996), cert. denied, 520 U.S. 1242 (1997);
*Renz v. Scott*, 28 F.3d 431, 432-33 (5th Cir. 1994); *Ellis v.

27

*Collins*, 956 F.2d 76, 80 (5th Cir. 1992), *cert. denied*, 503 U.S. 915 (1992); *Clark v. State of Texas*, 788 F.2d 309, 310-11 (5th Cir. 1986).

Petitioner failed to "fairly present" his insufficient evidence claim to the Texas Court of Criminal Appeals and, thereby, procedurally defaulted on same. *Coleman v. Thompson*, 501 U.S. at 735 n.1, 111 S.Ct. at 2557 n.1; *Hughes v. Dretke*, 412 F.3d 582, 595 (5th Cir. 2005), *cert. denied*, 546 U.S. 1177 (2006).

D.   <u>No Merits</u>

Furthermore, under the AEDPA, federal courts lack the power to grant habeas corpus relief on unexhausted claims. *Kunkle v. Dretke*, 352 F.3d 980, 988 (5th Cir. 2003)("28 U.S.C. § 2243(b)(1) requires that federal habeas petitioners fully exhaust remedies available in state court before proceeding in federal court."), *cert. denied*, 543 U.S. 835 (2004); *Riley v. Cockrell*, 339 F.3d 308, 318 (5th Cir. 2003); *Anderson v. Johnson*, 338 F.3d 382, 386 (5th Cir. 2003); *Henry v. Cockrell*, 327 F.3d 429, 432 (5th Cir. 2003)("Absent special circumstances, a federal habeas petitioner must exhaust his state remedies by pressing his claims in state court before he may seek federal habeas relief."), *cert. denied*, 540 U.S. 956 (2003); *Mercadel v. Johnson*, 179 F.3d 271, 276-77 (5th Cir. 1999); *Alexander v. Johnson*, 163 F.3d 906, 908 (5th Cir. 1998); *Jones v. Jones*, 163 F.3d 285, 299 (5th Cir. 1998),

*cert. denied*, 528 U.S. 895 (1999).  However, Title 28 U.S.C. §2254(b)(2) empowers a federal habeas court to deny an exhausted claim on the merits. *Smith v. Cockrell*, 311 F.3d 661, 684 (5th Cir. 2002), *cert. dism'd*, 541 U.S. 913 (2004); *Daniel v. Cockrell*, 283 F.3d 697, 701-02 (5th Cir. 2002), *cert. denied*, 537 U.S. 874 (2002).  The exhaustion of *all* federal claims in state court is a fundamental prerequisite to requesting federal collateral relief under Title 28 U.S.C. Section 2254. *Wilder v. Cockrell*, 274 F.3d 255, 259 (5th Cir. 2001); *Sterling v. Scott*, 57 F.3d 451, 453 (5th Cir. 1995), *cert. denied*, 516 U.S. 1050 (1996); 28 U.S.C. §2254(b)(1)(A).

Alternatively, even if this Court were to address *de novo* the merits of petitioner's insufficient evidence claim, petitioner would not be entitled to federal habeas relief.  The applicable constitutional standard for evaluating the sufficiency of evidence supporting a criminal conviction is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979).

The intermediate state appellate court's rejection on the merits of petitioner's insufficient evidence claim in the course of petitioner's direct appeal was an eminently reasonable

application of the *Jackson v. Virginia* standard.  When viewed in the light most favorable to the jury's verdict, the evidence fully supports a rational conclusion that petitioner shot an unarmed Rick Sanchez in the back as Sanchez attempted to flee the scene where petitioner had just shot Sanchez's brass-knuckle-totting brother Ronald Villarreal.  Petitioner testified that he shot the two brothers after he saw "one of them" reach for an item petitioner assumed to be a weapon.[30]  However, the jury was free to disregard petitioner's self-serving account of the shooting and to believe, instead, the testimony of prosecution witness Gerald Gonzalez, who testified (1) both of the victims turned and attempted to flee the scene once petitioner pulled out his handgun, (2) neither victim was engaged in any threatening conduct at the time petitioner began firing, (3) neither victim appeared to have a weapon visible in his hands, and (4) absolutely nothing prevented petitioner and his companions from non-violently moving to petitioner's vehicle and leaving the scene once the victims turned tail and ran away.[31]  The autopsy results on both victims strongly corroborated Gonzalez's account of the fatal shootings and refuted petitioner's version of same.

---

[30] S.F. Trial, Volume 7, testimony of Carlos Garza, at pp. 19-20.

[31] S.F. Trial, Volume 5, testimony of Gerald Gonzalez, at pp. 28-36, 39-40, 51, 101, 107-08, 111.

E.    Conclusions

Petitioner procedurally defaulted on his insufficient evidence claim by failing to fairly present same to the Texas Court of Criminal Appeals.  Because petitioner has not exhausted available state remedies on this claim, this Court is statutorily precluded from granting relief on same.

However, this Court can deny relief on a legally meritless, unexhausted, claim such as petitioner's insufficient evidence claim.  Title 28 U.S.C. §2254(b)(2) empowers a federal habeas court to deny an exhausted claim on the merits. *See Miller v. Dretke*, 431 F.3d 241, 245 (5th Cir. 2005)(holding a federal habeas court may deny, but not grant, a non-exhausted claim), *cert. denied*, ___ U.S. ___, 127 S.Ct. 353, 166 L.Ed.2d 65 (2006); *Neville v. Dretke*, 423 F.3d 474, 482 (5th Cir. 2005)(holding it was within the discretion of the district court to deny the petitioner's unexhausted ineffective assistance claim on the merits); *Smith v. Cockrell*, 311 F.3d at 684 (holding even when a claim is unexhausted and procedurally defaulted, the federal courts may deny the claim on the merits).  When examined *de novo*, petitioner's insufficient evidence claim lacks arguable merit.

Alternatively, the intermediate Texas appellate court's rejection on the merits of petitioner's insufficient evidence claim was neither contrary to, nor involved an unreasonable application of, clearly established Federal law, as determined by

31

the Supreme Court of the United States, nor based on an unreasonable determination of the facts in light of the evidence presented in the petitioner's state trial court proceedings.

## IV. <u>Ineffective Assistance Claim</u>

A.   <u>The Claim</u>

In his second claim herein, petitioner argues his trial counsel rendered ineffective assistance by failing to subpoena Gerald Mata to testify about a conversation Mata allegedly had with prosecution witness Gerald Gonzalez a few days after the fatal shootings in which Mata claimed Gonzalez stated one of the victims had a knife.

B.   <u>State Court Disposition</u>

The state habeas trial court concluded petitioner's complaints about his trial counsel's performance failed to satisfy either prong of the test set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).[32]   The Texas Court of Criminal Appeals implicitly adopted the state habeas trial court's conclusions when it denied petitioner's state habeas application. *Ex parte Carlos Garza*, App. no. WR-66,107-01 (Tex. Crim. App. November 1, 2006).

---

[32] State Habeas Transcript, at pp. 127-28.

32

C.    AEDPA Review

    1.    The Federal Constitutional Standard of Review

    The constitutional standard for determining whether a criminal defendant has been denied the effective assistance of *trial* counsel, as guaranteed by the Sixth Amendment, was announced by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984):

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components.  First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

    To satisfy the first prong of *Strickland*, i.e., establish that his counsel's performance was constitutionally deficient, a convicted defendant must show that counsel's representation "fell below an objective standard of reasonableness." *Wiggins v. Smith*, 539 U.S. 510, 521, 123 S.Ct. 2527, 2535, 156 L.Ed.2d 471 (2003); *Williams v. Taylor*, 529 U.S. 362, 390-91, 120 S.Ct. 1495, 1511, 146 L.Ed.2d 389 (2000).  In so doing, a convicted defendant must carry the burden of proof and overcome a strong presumption that the conduct of his trial counsel falls within a wide range of reasonable professional assistance. *Strickland v. Washington*, 466 U.S. at 687-91, 104 S.Ct. at 2064-66. Courts are extremely

deferential in scrutinizing the performance of counsel and make every effort to eliminate the distorting effects of hindsight. *See Wiggins v. Smith*, 539 U.S. at 523, 123 S.Ct. at 2536 (holding the proper analysis under the first prong of *Strickland* is an objective review of the reasonableness of counsel's performance under prevailing professional norms which includes a context-dependent consideration of the challenged conduct as seen from the perspective of said counsel at the time).  It is strongly presumed  counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Strickland v. Washington*, 466 U.S. at 690, 104 S.Ct. at 2066.

To satisfy the "prejudice" prong, a convicted defendant must establish a reasonable probability that, but for the objectively unreasonable misconduct of his counsel, the result of the proceeding would have been different. *Wiggins v. Smith*, 539 U.S. at 534, 123 S.Ct. at 2542; *Strickland v. Washington*, 466 U.S. at 694, 104 S.Ct. at 2068.  A reasonable probability is a probability sufficient to undermine confidence in the outcome of the proceeding. *Id.*  In evaluating prejudice, a federal habeas court must re-weigh the evidence in aggravation against the totality of available mitigating evidence. *Wiggins v. Smith*, 539 U.S. at 534, 123 S.Ct. at 2542.

In evaluating petitioner's complaints about the performance of his counsel under the AEDPA, the issue before this Court is whether the Texas Court of Criminal Appeals could reasonably have concluded petitioner's complaints about his trial counsel's performance failed to satisfy either prong of the *Strickland* analysis. *Schaetzle v. Cockrell*, 343 F.3d 440, 444 (5th Cir. 2003), *cert. denied*, 540 U.S. 1154 (2004).  In making this determination, this Court must consider the underlying *Strickland* standard. *Id.*  Where the state courts failed to adjudicate either prong of the *Strickland* test, this Court's review of the un-adjudicated prong is *de novo*. *See Rompilla v. Beard*, 545 U.S. 374, 390, 125 S.Ct. 2456, 2467, 162 L.Ed.2d 360 (2005)(holding *de novo* review of the prejudice prong of *Strickland* was required where the state courts rested their rejection of an ineffective assistance claim on the deficient performance prong and never addressed the issue of prejudice); *Wiggins v. Smith*, 539 U.S. at 534, 123 S.Ct. at 2542 (holding the same).

A habeas petitioner has the burden to prove both prongs of the *Strickland* ineffective assistance standard by a preponderance of the evidence. *Montoya v. Johnson*, 226 F.3d 399, 408 (5th Cir. 2000), *cert. denied*, 522 U.S. 1067 (2001).  As explained above, under the well-settled *Strickland* standard, the Supreme Court recognizes a strong presumption that counsel rendered adequate assistance and made all significant decisions in the exercise of

35

reasonable professional judgment. *Bell v. Cone*, 535 U.S. at 698, 122 S.Ct. at 1852; *Strickland v. Washington*, 466 U.S. at 690, 104 S.Ct. at 2066; *Scheanette v. Quarterman*, 482 F.3d 815, 820 (5th Cir. 2007); *Sonnier v. Quarterman*, 476 F.3d 349, 356 (5th Cir. 2007), *cert. filed June 5, 2007 (06-11804)*; *Amador v. Quarterman*, 458 F.3d 397, 410 (5th Cir. 2006), *cert. denied*, ___ U.S. ___, 127 S.Ct. 2129, 167 L.Ed.2d 866 (2007); *Gonzales v. Quarterman*, 458 F.3d 384, 390 (5th Cir. 2006), *cert. denied*, ___ U.S. ___, 127 S.Ct. 1909, 167 L.Ed.2d 568 (2007).

Furthermore, under the AEDPA, in order to obtain federal habeas relief on an ineffective assistance claim rejected on the merits by a state court, the petitioner must do more than convince the federal court the state court applied *Strickland* incorrectly - the petitioner must show the state court applied *Strickland* to the facts of his case in an objectively unreasonable manner. *Bell v. Cone*, 535 U.S. at 699, 122 S.Ct. at 1852.

The fundamental analytical problem with all of petitioner's complaints of ineffective assistance in this cause is the fact petitioner failed to present the state habeas court with any fact-specific allegations, much less any *evidence*, other than that contained in the petitioner's trial records, addressing the objective reasonableness of petitioner's trial counsel's strategic and tactical decision-making.

2.    <u>Inadequate Investigation and Failure to Subpoena Mata</u>

Petitioner complains his trial counsel failed to adequately meet with petitioner, failed to adequately and independently investigate the case against petitioner, and failed to interview and subpoena Gerald Mata to testify about Mata's alleged conversation with prosecution witness Gerald Gonzalez in which Gonzalez supposedly claimed (1) to have seen a knife in the hand of one of the victims and (2) to have been high on cocaine and ecstacy at the time of the fatal shootings.  Petitioner argues Mata's testimony on these subjects could have impeached Gonzalez's testimony that he had never seen any weapons in the hands of either of the two victims and generally attacked Gonzalez's credibility.

The initial problem with these arguments is that petitioner fails to explain why petitioner was himself unable to communicate this same factual information, about one of the victims being armed with a knife, to his trial counsel.  It was undisputed at trial that the late-Ronald Villarreal was holding a set of brass knuckles in his right hand when police arrived at the Regency Manor Apartment shortly after the shootings.  The problem for petitioner was the fact that, while he testified he began shooting when he saw one of the two victims reach for something "chrome" that he assumed was a weapon, he admitted under oath he never actually saw anything he definitively recognized as a

weapon in either victim's hand before he began shooting.[33]  Thus, whatever tangential impact Mata's testimony might have afforded petitioner's challenge to the credibility of Gonzalez's trial testimony, petitioner's own admissions and the uncontradicted autopsy results greatly diminished the value Mata's testimony could have furnished on the ultimate issues before the jury.  It was undisputed both victims were shot in the back and not at close range.  In addition, prosecution witness Roxanne Fernandez estimated petitioner waited at least 15 seconds after pulling his handgun before he began shooting, thereby casting doubt on petitioner's assertions that he drew his weapon and began firing almost simultaneously.

The second problem with this claim is that petitioner failed to furnish the state habeas court with any fact-specific allegations, much less an affidavit from Mata, establishing either (1) exactly what Mata could have furnished in terms of admissible testimony or (2) that Mata was available to furnish this testimony at the time of petitioner's trial.  In fact, petitioner's pleadings filed in this Court suffer from the same deficiencies.  Complaints of uncalled witnesses are disfavored because presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have

---

[33] S.F. Trial, Volume 7, testimony of Carlos Garza, at pp. 20, 25, 32, 35, 47, 48, 50, 61, 68-69, 87-88.

testified are largely speculative. *See Coble v. Dretke*, 496 F.3d 430, 436 (5th Cir. 2007)(complaints regarding uncalled witnesses address a matter of trial strategy and are speculative in nature); *Miller v. Dretke*, 420 F.3d 356, 362 (5th Cir. 2005)(such complaints necessarily involve matters of trial strategy); *Graves v. Cockrell*, 351 F.3d 143, 156 (5th Cir. 2003)(such complaints impinge on matters of trial strategy and are speculative in nature); *Evans v. Cockrell*, 285 F.3d 370, 377 (5th Cir. 2002)(such complaints are speculative in nature).  Thus, the burden was on petitioner during his state habeas corpus proceeding to allege and prove specific facts which showed his trial counsels' failure to pursue and present potentially beneficial testimony from Mata fell outside the wide range of presumptively reasonable professional performance.  Petitioner utterly failed to carry that burden.

Third, petitioner alleges no specific facts suggesting Mata would have been willing to talk with petitioner's trial counsel even if said counsel had attempted to interview Mata prior to petitioner's trial; Mata was under no legal obligation to speak with petitioner's defense counsel and could readily have refused all of said counsel's requests for an interview. *See Johnson v. Puckett*, 176 F.3d 809, 816 (5th Cir. 1999)(holding a prosecution witness's refusal to talk with defense counsel did not rise to the level of "cause" sufficient to overcome a procedural default

where there was no showing the witness's refusal was the result of official intimidation, threats, or duress); *United States v. Soape*, 169 F.3d 257, 271 n.9 (5th Cir. 1999)(recognizing that a government witness who does not wish to speak to or be interviewed by the defense prior to trial may not be required to do so), *cert. denied*, 527 U.S. 1011 (1999); *United States v. Caldwell*, 750 F.2d 341. 347 (5th Cir. 1984)(noting that a defendant's right of access to a witness exists coextensively with that witness's right to refuse to say anything), *cert. denied*, 471 U.S. 1007 (1985); *United States v. Benson*, 495 F.2d 475, 479 (5th Cir. 1974)(holding the uniform rule is that a government witness who does not wish to be interviewed by the defense may not be required to do so), *cert. denied*, 419 U.S. 1035 (1974).  Thus, the state habeas court could have reasonably concluded there was nothing objectively unreasonable with the failure of petitioner's trial counsel to contact Mata prior to petitioner's trial.

Fourth, petitioner's argument that his trial counsel should have attacked Gonzalez's credibility ignores the fact that substantial portions of Gonzalez's trial testimony actually supported petitioner's self-defense theory.  More specifically, Gonzalez testified (1) in great detail about the incident several weeks before the fatal shootings in which Sanchez and Villarreal attempted to assault Gonzalez, petitioner, and their dates as the

40

foursome was leaving the Regency Manor Apartments, (2) he had seen brass knuckles in the hand of one of the two victims during that earlier incident, (3) petitioner had been hit by a brass-knuckled fist during that incident, (4) Sanchez and Villarreal initiated the confrontation on the date of the fatal shootings, (5) either Sanchez or Villarreal made a quick trip back inside their apartment as petitioner and his companions were attempting to leave the complex on the evening of the shootings, and (6) he believed petitioner was fully justified and acting to protect himself, Gonzales, and their two companions when petitioner drew his weapon on the date of the fatal shootings.[34]  Thus, attacking Gonzalez's credibility would have meant attacking the only witness other than the petitioner himself who felt the petitioner's actions were justified under the circumstances.

Finally, petitioner was charged with capital murder and faced the distinct possibility of a life sentence.  Thanks in no small part to the tactical and strategic decisions of petitioner's trial counsel, petitioner instead was convicted only of murder and received an extremely lenient twenty-year sentence for a double-homicide which, based on all relevant evidence introduced at trial, was at least partially motivated by a long-standing gang-related animus between petitioner and his victims.

---

[34] S.F. Trial, Volume 5, testimony of Gerald Gonzalez, at pp. 11-13, 20-24, 65, 68, 71-72, 77-78, 82-83, 86, 91.

Petitioner admitted under oath he never saw any item he could definitively identify as a weapon in the hand of either of his victims on the date of the fatal shootings.  Petitioner also admitted under oath he shot both his victims in the back at a time when he and his companions had unfettered access to petitioner's vehicle and, thereby, a non-violent means of departing the scene without interference from either victim. Thus, even if Mata's testimony could have marginally impeached Gonzalez's trial testimony, petitioner's own trial testimony furnished overwhelming evidence of petitioner's guilt.  Under such circumstances, there is no reasonable probability that, but for the failure of petitioner's trial counsel to call Mata as a trial witness, the outcome of either phase of petitioner's trial would have been different.

The state habeas court reasonably concluded petitioner's conclusory complaints that his trial counsel (1) failed to adequately investigate the case against petitioner and (2) failed to interview and subpoena Mata do not satisfy either prong of *Strickland*.

3.   Conclusions

The state habeas court's conclusions that petitioner's complaints about the performance of his trial counsel failed to satisfy either prong of *Strickland* were neither contrary to, nor involved an unreasonable application of, clearly established

Federal law, as determined by the Supreme Court of the United
States, nor based on an unreasonable determination of the facts
in light of the evidence presented in the petitioner's state
trial court and state habeas corpus proceedings.

### V. __Erroneous Guilt-Innocence Phase Jury Instruction__

A.   <u>The Claim</u>

In his third claims herein, petitioner argues the state
trial court erred when it instructed his jury at the guilt-
innocence phase of trial in conformity with Section 9.31(b)(5) of
the Texas Penal Code and this error violated petitioner's federal
constitutional rights under the Fifth and Fourteenth Amendments.

B.   <u>State Court Disposition</u>

Petitioner raised this same complaint as a point of error in
his direct appeal.  Significantly, petitioner's legal arguments
in support of this contention in both petitioner's appellant's
brief and petitioner's petition for discretionary review (both of
which were prepared by counsel) were framed in terms of purely
state law issues.  The Texas Fourth Court of Appeals concluded
the state trial court properly instructed the jury regarding the
limitation on self-defense set forth in Section 9.31(b)(5)(A),
Texas Penal Code, because the evidence at petitioner's trial
rendered such an instruction appropriate as a matter of state
substantive law. *Garza v. State*, 2005 WL 2012290, *7 (Tex. App.
-- San Antonio, August 24, 2005, *pet. ref'd*).  Petitioner's

petition for discretionary review "fairly presented" this same complaint to the Texas Court of Criminal Appeals in purely state-law terms, i.e., without any citation or allusion to federal constitutional principles.

C.   <u>State Law Violations are Insufficient to Justify Federal Habeas Corpus Relief</u>

Insofar as petitioner's third claim herein is a complaint that the state courts improperly or erroneously applied state substantive law in crafting the guilt-innocence phase jury instructions during petitioner's trial, that claim does not furnish a basis for federal habeas relief.  Federal habeas corpus relief will not issue to correct errors of state constitutional, statutory, or procedural law, unless a federal issue is also presented. *See Estelle v. McGuire*, 502 U.S. 62, 67-68, 112 S.Ct. 475, 480, 116 L.Ed.2d 385 (1991)(holding complaints regarding the admission of evidence under California law did not present grounds for federal habeas relief absent a showing that admission of the evidence in question violated due process); *Lewis v. Jeffers*, 497 U.S. 764, 780, 110 S.Ct. 3092, 3102, 111 L.Ed.2d 606 (1990)(recognizing that federal habeas relief will not issue for errors of state law); *Pulley v. Harris*, 465 U.S. 37, 41, 104 S.Ct. 871, 874, 79 L.Ed.2d 29 (1984)(holding a federal court may not issue the writ on the basis of a perceived error of state law).

44

In the course of reviewing state criminal convictions in federal habeas corpus proceedings, a federal court does *not* sit as a super-state appellate court. *Estelle v. McGuire*, 502 U.S. at 67-68, 112 S.Ct. at 480; *Lewis v. Jeffers*, 497 U.S. at 780, 110 S.Ct. at 3102; *Pulley v. Harris*, 465 U.S. at 41, 104 S.Ct. at 874.

> When a federal district court reviews a state prisoner's habeas petition pursuant to 28 U.S.C. § 2254 it must decide whether the petitioner is "in custody in violation of the Constitution or laws or treaties of the United States."  The court does not review a judgment, but the lawfulness of the petitioner's custody *simpliciter*.

*Coleman v. Thompson*, 501 U.S. at 730, 111 S.Ct. at 2554.

A federal court may grant habeas relief based on an erroneous state court evidentiary ruling only if the ruling violates a specific federal constitutional right or is so egregious it renders the petitioner's trial fundamentally unfair. *Brown v. Dretke*, 419 F.3d 365, 376 (5th Cir. 2005), *cert. denied*, 546 U.S. 1217 (2006); *Wilkerson v. Cain*, 233 F.3d 886, 890 (5th Cir. 2000); *Johnson v. Puckett*, 176 F.3d 809, 820 (5th Cir. 1999).

Thus, the question before this Court is not whether the state trial court properly applied state substantive law in crafting petitioner's guilt-innocence phase jury instructions but, rather, whether petitioner's federal constitutional rights were violated by the state trial court's inclusion of its

45

language in those instructions advising the jury regarding the details of the state substantive law of self-defense. *See Bigby v. Dretke*, 402 F.3d 551, 563 (5th Cir. 2005)(holding federal habeas review of a state court's evidentiary ruling focuses exclusively on whether the ruling violated the federal Constitution), *cert. denied*, 546 U.S. 900 (2005).

D.    Procedural Default on Unexhausted Federal Gloss

     In an apparent attempt to circumvent the principles discussed immediately above, petitioner's *pro se* memorandum in support of his third claim herein concludes with an ambiguous assertion that the state trial court's guilt-innocence phase jury instructions violated petitioner's Fifth and Fourteenth Amendment rights.  However, as respondent correctly points out, petitioner included no citation or allusion to federal law in support of the same complaint in either petitioner's brief on direct appeal or petition for discretionary review.  Thus, insofar as petitioner now attempts to put a "federal constitutional" gloss on what is essentially a complaint about the interpretation of state substantive law, petitioner's third claim herein presents a wholly unexhausted legal theory to this Court.

     The exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts and, thereby, to protect the state courts' role in the

enforcement of federal law and prevent disruption of state judicial proceedings. *Carey v. Saffold*, 536 U.S. 214, 220, 122 S.Ct. 2134, 2138, 153 L.Ed.2d 260 (2002); *Duncan v. Walker*, 533 U.S. 167, 179, 121 S.Ct. 2120, 2128, 150 L.Ed.2d 251 (2001); *O'Sullivan v. Boerckel*, 526 U.S. at 845, 119 S.Ct. at 1732; *Rose v. Lundy*, 455 U.S. 509, 518-19, 102 S.Ct. 1198, 1203, 71 L.Ed.2d 379 (1982).

The exhaustion doctrine requires that the petitioner present his *federal* claim in a manner reasonably designed to afford the State courts a meaningful opportunity to address same. The Supreme Court has succinctly explained the rationale behind the exhaustion requirement:

> Exhaustion means more than notice.  In requiring exhaustion of a federal claim in state court, Congress meant that exhaustion be serious and meaningful.
> The purpose of exhaustion is not to create a procedural hurdle on the path to federal habeas court, but to channel claims into an appropriate forum, where meritorious claims may be vindicated and unfounded litigation obviated before resort to federal court. Comity concerns dictate that the requirement of exhaustion is not satisfied by the mere statement of a federal claim in state court.  Just as the State must afford the petitioner a full and fair hearing on his federal claim, so must the petitioner afford the State a full and fair opportunity to address and resolve the claim on the merits.

*Keeney v. Tamayo-Reyes*, 504 U.S. 1, 10, 112 S.Ct. 1715, 1720, 118 L.Ed.2d 318 (1992).

The exhaustion requirement is satisfied when the substance of the *federal* habeas claim has been "fairly presented" to the highest state court, i.e., the petitioner presents his claims

before the state courts in a procedurally proper manner according to the rules of the state courts. *Baldwin v. Reese*, 541 U.S. at 29-32, 124 S.Ct. at 1349-51 (holding a petitioner failed to "fairly present" a claim of ineffective assistance by his state appellate counsel merely by labeling the performance of said counsel "ineffective," without accompanying that label with either a reference to *federal* law or a citation to an opinion applying *federal* law to such a claim); *Moore v. Cain*, 298 F.3d 361, 364 (5th Cir. 2002), *cert. denied*, 537 U.S. 1236 (2003). The petitioner need not spell out each syllable of the claim before the state court for the claim to have been "fairly presented" and thereby fulfill the exhaustion requirement. *Riley v. Cockrell*, 339 F.3d 308, 318 (5th Cir. 2003), *cert. denied*, 543 U.S. 1056 (2005); *Fisher v. Texas*, 169 F.3d 295, 303 (5th Cir. 1999).  Nonetheless, a petitioner has a duty to present the "federal" nature of his claim to the state courts in a straight-forward, above-board, manner; a petitioner does not "fairly present' a federal constitutional claim to the state courts by burying a vague allusion to federal constitutional principles amid a mountain of state-law arguments. *Id.*

The exhaustion requirement is not met if the petitioner presents new legal theories or factual claims in his federal habeas petition. *Anderson v. Harless*, 459 U.S. 4, 6-7, 103 S.Ct. 276, 277-78, 74 L.Ed.2d 3 (1982); *Riley v. Cockrell*, 339 F.3d at

318 ("It is not enough that the facts applicable to the federal claims were all before the State court, or that the petitioner made a similar state-law based claim.  The federal claim must be the 'substantial equivalent' of the claim brought before the State court."); *Wilder v. Cockrell*, 274 F.3d 255, 259 (5th Cir. 2001)("where petitioner advances in federal court an argument based on a legal theory distinct from that relied upon in the state court, he fails to satisfy the exhaustion requirement"); *Finley v. Johnson*, 243 F.3d 215, 219 (5th Cir. 2001).  Likewise, to have "fairly presented" his *federal* claim, the petitioner must have reasonably alerted the state courts to the *federal* nature of his claim. *Baldwin v. Reese*, 541 U.S. at 29-32, 124 S.Ct. at 1349-51 (holding a petitioner failed to "fairly present" a claim of ineffective assistance by his state appellate counsel merely by labeling the performance of said counsel "ineffective," without accompanying that label with either a reference to *federal* law or a citation to an opinion applying *federal* law to such a claim).

Petitioner's appellant's brief and petition for discretionary review failed to "fairly present" the state habeas court with the same conclusory federal due process arguments petitioner presents to this Court in support of his third claim herein.

A fleeting reference to the federal constitution, tacked onto the end of a lengthy, purely state-law

49

evidentiary argument, does not sufficiently alert and afford a state court the opportunity to address an alleged violation of federal rights. Moreover, to hold that vague references to such expansive concepts as due process and fair trial fairly present, and therefore exhaust, federal claims is to eviscerate the exhaustion requirement.

*Wilder v. Cockrell*, 274 F.3d at 260.

Petitioner's cryptic references to the Fifth and Fourteenth Amendments in the concluding sentence of his memorandum in support of his third claim herein are no substitute for "fair presentation" of a clearly articulated federal constitutional claim to the Texas Court of Criminal Appeals. *Wilder v. Cockrell*, 274 F.3d at 260. Thus, respondent correctly argues petitioner has failed to exhaust available state remedies on the federal aspect of petitioner's third claim for federal habeas relief in this cause. Thus, for the reasons set forth at length in Section III.C. above, petitioner has procedurally defaulted on the unexhausted federal aspect of his third claim herein.

E.   No Merits

Finally, petitioner's federal constitutional complaint about his guilt-innocence phase jury charge lacks any arguable merit.

Improper jury instructions in state criminal trial do not generally form the basis for federal habeas relief. *Estelle v. McGuire*, 502 U.S. 62, 71-72, 112 S.Ct. 475, 482, 116 L.Ed.2d 385 (1991); *Galvan v. Cockrell*, 293 F.3d 760, 764 (5th Cir. 2002). "It is the rare case in which an improper instruction will

50

justify reversal of a criminal conviction when no objection has been made in the trial court." *Henderson v. Kibbe*, 431 U.S. 145, 154, 97 S.Ct. 1730, 1736, 52 L.Ed.2d 203 (1977); *Mayabb v. Johnson*, 168 F.3d 863, 867 (5th Cir. 1999). The fact a jury instruction was incorrect under state law is not a basis for federal habeas relief. *Gilmore v. Taylor*, 508 U.S. 333, 342, 113 S.Ct. 2112, 2117, 124 L.Ed.2d 306 (1993); *Estelle v. McGuire*, 502 U.S. 62, 71, 112 S.Ct. 475, 482, 116 L.Ed.2d 385 (1991); *Marshall v. Lonberger*, 459 U.S. 422, 438 n.6, 103 S.Ct. 843, 853 n.6, 74 L.Ed.2d 646 (1988). Rather, the question is whether the allegedly ailing instruction by itself so infected the entire trial that the resulting conviction violates due process. *Estelle v. McGuire*, 502 U.S. at 72, 112 S.Ct. at 482; *Henderson v. Kibbe*, 431 U.S. at 154, 97 S.Ct. at 1737; *Cupp v. Naughten*, 414 U.S. 141, 147, 94 S.Ct. 396, 400-01, 38 L.Ed.2d 368 (1973); *Johnson v. Puckett*, 176 F.3d 809, 824 (5th Cir. 1999); *Mayabb v. Johnson*, 168 F.3d 863, 867 (5th Cir. 1999), *cert, denied*, 528 U.S. 969 (1999). "An omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of law." *Henderson v. Kibbe*, 431 U.S. at 155, 97 S.Ct. at 1737. The relevant inquiry is whether the failure to give an instruction by itself so infected the entire trial that the resulting conviction violates due process. *Cupp v. Naughten*, 414 U.S. at 147, 94 S.Ct. at 400-01; *Galvan v. Cockrell*, 293 F.3d at 764-65. A federal

51

court may reverse a state court criminal conviction based upon erroneous jury instructions only when the instructions in question render the entire trial fundamentally unfair. *Henderson v. Kibbe*, 431 U.S. at 154, 97 S.Ct. at 1736; *Cupp v. Naughten*, 414 U.S. at 147, 94 S.Ct. at 400-01; *Mayabb v. Johnson*, 168 F.3d at 867.  Moreover, there is a strong presumption that errors in jury instructions are subject to harmless error analysis. *Galvan v. Cockrell*, 293 F.3d at 765.

Insofar as petitioner argues the state trial court erroneously construed *applicable state law* when it instructed petitioner's jury pursuant to Section 9.31(b)(5)(A), the intermediate state appellate court's conclusions to the contrary are binding in the course of this Court's federal habeas review of petitioner's federal habeas claims herein. *See Bradshaw v. Richey*, 546 U.S. 74, 76, 126 S.Ct. 602, 604, 163 L.Ed.2d 407 (2005)("We have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."); *Estelle v. McGuire*, 502 U.S. 62, 67-68, 112 S.Ct. 475, 480, 116 L.Ed.2d 385 (1991)(it is not the province of a federal habeas court to reexamine state-court determinations of state-law questions).  This Court is not free to re-examine the state appellate court's evaluation of *applicable state law*; the Texas Fourth Court of Appeals'

conclusion that the state trial court correctly applied state law when it instructed petitioner's jury regarding the provisions of Section 9.31(b)(5)(A) is not subject to re-evaluation by this federal habeas court. *See Bradshaw v. Richey*, 546 U.S. at 76, 126 S.Ct. at 604 (state court interpretations of state law bind a federal court sitting in habeas corpus); *Amador v. Quarterman*, 458 F.3d at 412 (holding a federal habeas court must defer to a state court's interpretation of state law); *Fuhrman v. Dretke*, 442 F.3d 893, 901 (5th Cir. 2006)(holding the same); *Young v. Dretke*, 356 F.3d 616, 628 (5th Cir. 2004)("In our role as a federal habeas court, we cannot review the correctness of the state habeas court's interpretation of state law."); *Johnson v. Cain*, 215 F.3d 489, 494 (5th Cir. 2000)(holding a federal habeas court may not review a state court's interpretation of its own law); *Gibbs v. Johnson*, 154 F.3d 253, 259 (5th Cir. 1998)(holding the same), *cert. denied*, 526 U.S. 1089 (1999).

Because the state appellate court's interpretation of applicable state law is binding on this Court, and because petitioner has identified no specific federal constitutional right which he claims was violated by virtue of the state trial court's Section 9.31(b)(5)(A) jury instruction, the only question remaining before this Court is whether the instruction in question rendered the guilt-innocence phase of petitioner's trial fundamentally unfair. At all times relevant to petitioner's

offense and trial, applicable Texas law has provided a person is justified in using force against another when and to the degree he reasonably believes the force is immediately necessary to protect himself against the other's use or attempted use of unlawful force *except* when the actor seeks an explanation from or discussion with the other person concerning the actor's differences with the other person while the actor is unlawfully carrying or in possession of a weapon. Texas Penal Code Annotated §9.31(b)(5)(Vernon 2003).  Texas law further provides an actor's use of deadly force is permissible when the actor reasonably believes use of such force is immediately necessary to protect the life of the actor or the life of a third person or to prevent the commission of a violent felony. Texas Penal Code Annotated §§9.32-9.34 (Vernon 2003).  Nothing in the federal Constitution precluded the State of Texas from placing restrictions on the availability of these defensive theories in a state criminal proceeding.  The Texas Fourth Court of Appeals concluded the state trial court correctly instructed petitioner's jury on the foregoing aspects of substantive state law at the guilt-innocence phase of petitioner's trial.  That conclusion binds this federal habeas court. *Bradshaw v. Richey*, 546 U.S. at 76, 126 S.Ct. at 604.  Petitioner alleges no specific facts establishing that his entire trial was rendered fundamentally unfair by virtue of the state trial court's *wholly correct* instructions to petitioner's

jury regarding applicable state law.  Accordingly, petitioner's complaints about his guilt-innocence phase jury charge do not furnish an arguable basis for federal habeas relief.

F.   Conclusions

Petitioner procedurally defaulted on his unexhausted complaint that his guilt-innocence phase jury instructions violated petitioner's *federal constitutional rights.*  Insofar as petitioner complains that the Texas appellate courts erroneously construed applicable state law in approving petitioner's guilt-innocence phase jury charge, that complaint does not furnish a basis for federal habeas relief.  Finally, petitioner's complaint regarding his guilt-innocence phase jury charge does not allege any facts showing that petitioner's federal constitutional rights were violated thereby.

## VI. **Prosecutorial Argument**

A.   The Claim

In his final claim for federal habeas relief herein, petitioner argues the prosecution made several "prejudicial" comments regarding improperly admitted evidence of petitioner's gang affiliation during its closing argument.

B.   Procedural Default on Unexhausted Claim

As respondent correctly points out, petitioner did not present any analogous claim for relief or point of error to the Texas Court of Criminal Appeals in either his petition for

discretionary review or his state habeas corpus application.
Thus, this complaint remains completely unexhausted at this
juncture.  For the reasons set forth in Section III.C. above,
petitioner's final claim herein is procedurally defaulted.

C.   <u>No Merits</u>

     Alternatively, petitioner's rambling complaints in his final
claim herein amount to little more than arguments that
prosecutors improperly commented during closing argument on
evidence which was admitted without objection during petitioner's
trial.  More specifically, prosecution witnesses Roxanne
Fernandez and Gerald Gonzales testified without objection from
petitioner that (1) Sanchez and Villarreal were members of the
"Crips" street gang while petitioner was a member of the "Bloods"
street gang,[35] and (2) the previous altercation between
petitioner and the victims several weeks before the fatal
shootings had been over petitioner's display of "Bloods" colors,
i.e., red, during a visit to the Regency Manor Apartments.[36]
Petitioner himself testified that (1) he had once been a member
of the "Bloods' street gang, (2) the "CK" tattoo on his arm meant
"Crip Killer," (3) "Bloods" and "Crips" do not get along, and (4)

_____

     [35] S.F. Trial, Volume 4, testimony of Ashley Murakami, at
pp. 139-40, 171-74, 201-02, 204, 214-15; testimony of Roxanne
Fernandez, at pp. 267-68; Volume 5, testimony of Gerald Gonzales,
at pp. 11-13, 70.

     [36] S.F. Trial, Volume 5, testimony of Gerald Gonzalez, at p.
13.

the graffiti on his bedroom walls included numerous words and symbols hostile to "Crips."[37]

An improper prosecutorial argument which does *not* implicate a specific constitutional provision is not cognizable on collateral review unless the defendant shows an abridgment of due process, i.e., the improper argument rendered the proceeding fundamentally unfair. *Darden v. Wainwright*, 477 U.S. 168, 181, 106 S.Ct. 2464, 2471, 91 L.Ed.2d 144 (1986)("it is not enough that the prosecutors' remarks were undesirable or even universally condemned.  The relevant inquiry is whether the prosecutors' comments so infected the trial with unfairness as to make the resulting conviction a denial of due process"); *Harris v. Johnson*, 313, F.3d 238, 245 (5th Cir. 2002), *cert. denied*, 540 U.S. 1218 (2004), (holding prosecutorial remarks are a sufficient ground for habeas relief only if they are so prejudicial they render the trial fundamentally unfair and such unfairness exists only if the prosecutor's remarks evince either persistent and pronounced misconduct or the evidence was so insubstantial that, in probability, but for the remarks no conviction would have occurred); *Dowthitt v. Johnson*, 230 F.3d 733, 755 (5th Cir. 2000), *cert. denied*, 532 U.S. 915 (2001), (holding (1) the relevant question is whether the prosecutor's comments so

---

[37] S.F. Trial, Volume 7, testimony of Carlos Garza, at pp. 89-94.

infected the trial with unfairness as to make the resulting conviction a denial of due process and (2) the prosecutor is permitted to argue to the jury those inferences and conclusions the prosecutor wishes the jury to draw from the evidence so long as those inferences are grounded upon evidence); *Barrientes v. Johnson*, 221 F.3d 741, 753 (5th Cir. 2000), *cert. dism'd*, 531 U.S. 1134 (2001), (holding (1) federal habeas review of allegedly improper prosecutorial statements made during the punishment phase of a capital trial focuses on whether the remarks so infected the punishment phase as to make the resulting sentence a denial of due process and (2) a trial is fundamentally unfair only if there is a reasonable probability the verdict might have been different had the trial been properly conducted).

Improper jury argument by the state does not present a claim of constitutional magnitude in a federal habeas action unless it is so prejudicial that the state court trial was rendered fundamentally unfair within the meaning of the Due Process Clause of the Fourteenth Amendment. *Id.* To establish that a prosecutor's remarks are so inflammatory, the petitioner must demonstrate the misconduct is persistent and pronounced or the evidence of guilt was so insubstantial the conviction would not have occurred but for the improper remarks. *Harris v. Johnson*, 313 F.3d at 245; *Turner v. Johnson*, 106 F.3d 1178, 1188 (5th Cir. 1997); *Nichols v. Scott*, 69 F.3d 1255, 1278 (5th Cir.

1995)(wholly apart from the issue of procedural bar, failure to
object to an argument is an indication it was not perceived as
having a substantial adverse effect or would not naturally and
necessarily be understood as advancing improper considerations
*citing Milton v. Procunier*, 744 F.2d 1091, 1095 (5th Cir. 1984),
*cert. denied*, 471 U.S. 1030 (1985)), *cert. denied*, 518 U.S. 1022
(1996); *Buxton v. Collins*, 925 F.2d at 825 (recognizing the four
proper areas for prosecutorial jury argument are summation of the
evidence, reasonable inference from the evidence, answers to
opposing counsel's argument, and pleas for law enforcement).

　　"A prosecutor's improper argument will, in itself, exceed
constitutional limitations in only the most egregious cases."
*Harris v. Johnson*, 313 F.3d at 245 n.12; *Ortega v. McCotter*, 808
F.2d 406, 410 (5th Cir. 1987)(*quoting Menzies v. Procunier*, 743
F.2d 281, 288-89 (5th Cir. 1984)).　The burden is on the habeas
petitioner to show a reasonable probability that, but for the
prosecutor's remarks, the result of the trial would have been
different. *Nichols v. Scott*, 69 F.3d at 1278.

　　Petitioner did not object to the testimony of Roxanne
Fernandez or Gerald Gonzales which identified petitioner as a
member of the "Bloods" street gang and which identified Sanchez
and Villarreal as members of the "Crips" street gang.　Petitioner
himself admitted a degree of animosity existed between those two
street gangs and that the altercation between petitioner and his

victims weeks before the fatal shootings had been premised upon
the their divergent street gang membership.  Thus, even if the
state trial court erred in admitting photographs showing the
street-gang-related graffiti on the walls of petitioner's
bedroom, there was ample evidence before the jury from which a
reasonable person could rationally infer the petitioner's fatal
shootings of Sanchez and Villarreal were "gang related."

The prosecutor's allegedly objectionable arguments about
petitioner's gang membership did not so infect petitioner's trial
as to render same fundamental unfair.  Nor is there any
reasonable probability that, but for the prosecutor's remarks in
question, the outcome of either phase of petitioner's trial would
have been different.  There was overwhelming evidence favoring
the prosecution as to both the petitioner's guilt and the
propriety of the jury's sentence.

Under Texas law, proper closing argument by the prosecution
in criminal trials fall into four general areas: (1) summation of
the evidence; (2) reasonable deduction from the evidence; (3)
answer to argument of opposing counsel; and (4) pleas for law
enforcement. *Westbrook v. State*, 29 S.W.3d 103, 115 (Tex. Crim.
App. 2000), *cert. denied*, 532 U.S. 944 (2001); *Guidry v. State*, 9
S.W.3d 133, 154 (Tex. Crim. App. 1999), *cert. denied*, 531 U.S.
837 (2000);  *Hathorne v. State*, 848 S.W.2d 101, 117 (Tex. Crim.
App. 1992), *cert. denied*, 509 U.S. 932 (1993).  *See also Buxton*

*v. Collins*, 925 F.2d 816, 825 (5th Cir. 1991)(recognizing the four proper areas for prosecutorial jury argument are summation of the evidence, reasonable inference from the evidence, answers to opposing counsel's argument, and pleas for law enforcement), *cert. denied*, 498 U.S. 1128 (1991).

The uncontradicted evidence admitted during the guilt-innocence phase of petitioner's trial established, or at least permitted a reasonable inference, that (1) petitioner was a member of a street gang which both he and his two victims considered to be antagonistic toward the street gang of which petitioner's victims were members; (2) prior to the date of the fatal shootings, petitioner and his victims had engaged in an altercation arising from their competing gang memberships; (3) immediately before the fatal shootings, petitioner and his victims exchanged gang-related taunts, offensive language, and crude hand gestures; (4) petitioner bore a tattoo identifying himself as a "Crip Killer"; and (5) petitioner's bedroom walls were decorated with graffiti identifying petitioner as sympathetic to the "Bloods" street gang and disrespectful, even hateful, toward members of the "Crips" street gang.  Under such circumstances, it was fully appropriate for the prosecution to suggest in its closing argument at both phases of petitioner's trial that petitioner's actions on November 14, 2003 had been

both pre-meditated and motivated by street-gang-related animus between petitioner and his two "Crips" victims.

D.   Conclusions

Petitioner procedurally defaulted on his unexhausted complaints about the prosecution's closing argument at both phases of petitioner's trial.  Petitioner had no basis to complain about prosecutorial arguments which drew reasonable inferences from evidence admitted without objection during petitioner's trial.  Petitioner's trial was not rendered fundamentally unfair by virtue of the prosecution's jury arguments in question.

## VII. **Certificate of Appealability**

The AEDPA converted the "certificate of probable cause" previously required as a prerequisite to an appeal from the denial of a petition for federal habeas corpus relief into a "Certificate of Appealability" ("CoA"). *See Hill v. Johnson*, 114 F.3d 78, 80 (5th Cir. 1997)(recognizing the "substantial showing" requirement for a CoA under the AEDPA is merely a change in nomenclature from the CPC standard); *Muniz v. Johnson*, 114 F.3d 43, 45 (5th Cir. 1997)(holding the standard for obtaining a CoA is the same as for a CPC).  The CoA requirement supersedes the previous requirement for a certificate of probable cause to appeal for federal habeas corpus petitions filed after the effective date of the AEDPA. *Robison v. Johnson*, 151 F.3d 256,

259 n.2 (5th Cir. 1998), *cert. denied*, 526 U.S. 1100 (1999); *Hallmark v. Johnson*, 118 F.3d 1073, 1076 (5th Cir. 1997), *cert. denied sub nom. Monroe v. Johnson*, 523 U.S. 1041 (1998).

Under the AEDPA, before a petitioner may appeal the denial of a habeas corpus petition filed under Section 2254, the petitioner must obtain a CoA. *Miller-El v. Johnson*, 537 U.S. 322, 335-36, 123 S.Ct. 1029, 1039, 154 L.Ed.2d 931 (2003); 28 U.S.C. §2253(c)(2).  Likewise, under the AEDPA, appellate review of a habeas petition is limited to the issues on which a CoA is granted. *See Crutcher v. Cockrell*, 301 F.3d 656, 658 n.10 (5th Cir. 2002)(holding a CoA is granted on an issue-by-issue basis, thereby limiting appellate review to those issues); *Jones v. Cain*, 227 F.3d 228, 230 n.2 (5th Cir. 2000)(holding the same); *Lackey v. Johnson*, 116 F.3d 149, 151 (5th Cir. 1997)(holding the scope of appellate review of denial of a habeas petition limited to the issues on which CoA has been granted).  In other words, a CoA is granted or denied on an issue-by-issue basis, thereby limiting appellate review to those issues on which CoA is granted alone. *Crutcher v. Cockrell*, 301 F.3d at 658 n.10; *Lackey v. Johnson*, 116 F.3d at 151; *Hill v. Johnson*, 114 F.3d at 80; *Muniz v. Johnson*, 114 F.3d at 45; *Murphy v. Johnson*, 110 F.3d 10, 11 n.1 (5th Cir. 1997); 28 U.S.C. §2253(c)(3).

A CoA will not be granted unless the petitioner makes a substantial showing of the denial of a constitutional right.

*Tennard v. Dretke*, 542 U.S. 274, 282, 124 S.Ct. 2562, 2569, 159 L.Ed.2d 384 (2004); *Miller-El v. Johnson*, 537 U.S. at 336, 123 S.Ct. at 1039; *Slack v. McDaniel*, 529 U.S. 473, 483, 120 S.Ct. 1595, 1603, 146 L.Ed.2d 542 (2000); *Barefoot v. Estelle*, 463 U.S. 880, 893, 103 S.Ct. 3383, 3394, 77 L.Ed.2d 1090 (1983). To make such a showing, the petitioner need *not* show he will prevail on the merits but, rather, must demonstrate that reasonable jurists could debate whether (or, for that matter, agree) the petition should have been resolved in a different manner or that the issues presented are adequate to deserve encouragement to proceed further. *Tennard v. Dretke*, 542 U.S. at 282, 124 S.Ct. at 2569; *Miller-El v. Johnson*, 537 U.S. at 336, 123 S.Ct. at 1039; *Slack v. McDaniel*, 529 U.S. at 484, 120 S.Ct. at 1604; *Barefoot v. Estelle*, 463 U.S. at 893 n.4, 103 S.Ct. at 3394 n.4. This Court is authorized to address the propriety of granting a CoA *sua sponte*. *Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000).

The showing necessary to obtain a CoA on a particular claim is dependent upon the manner in which the District Court has disposed of a claim. If this Court rejects a prisoner's constitutional claim on the merits, the petitioner must demonstrate reasonable jurists could find the court's assessment of the constitutional claim to be debatable or wrong. *Miller-El v. Johnson*, 537 U.S. at 338, 123 S.Ct. at 1040. *Accord Tennard v. Dretke*, 542 U.S. at 282, 124 S.Ct. at 2569. In a case in which

the petitioner wishes to challenge on appeal this Court's
dismissal of a claim for a reason not of constitutional
dimension, such as procedural default, limitations, or lack of
exhaustion, the petitioner must show jurists of reason would find
it debatable whether the petition states a valid claim of the
denial of a constitutional right <u>and</u> whether this Court was
correct in its procedural ruling. *See Slack v. McDaniel*, 529 U.S.
at 484, 120 S.Ct. at 1604 (holding when a district court denies a
habeas claim on procedural grounds, without reaching the
underlying constitutional claim, a CoA may issue only when the
petitioner shows that reasonable jurists would find it debatable
whether (1) the claim is a valid assertion of the denial of a
constitutional right and (2) the district court's procedural
ruling was correct).

     None of petitioner's claims herein satisfy the standard for
obtaining a Certificate of Appealability.  There is no basis for
debate among reasonable jurists over the fact the petitioner
procedurally defaulted on his unexhausted first, third, and
fourth claims herein.  There is likewise no room for debate among
reasonable jurists over the objective reasonableness of the state
habeas court's denial on the merits of petitioner's ineffective
assistance claim herein; petitioner furnished the state habeas
court with no fact-specific allegations much less any evidence,
establishing that Gerald Mata was available to testify at the

time of petitioner's trial about any subject likely to have an impact on the outcome of either phase of petitioner's trial.  At best, Mata would have furnished a means of collaterally attacking the credibility of prosecution eyewitness Gerald Gonzalez, who was the only witness other than petitioner to assert that petitioner's actions on November 14, 2003 had been a reasonable response to the victims' provocations.  Petitioner's claims herein are not subject to a different disposition by reasonable jurists and do not deserve encouragement to proceed further. Accordingly, petitioner is not entitled to a CoA on any of his claims herein.

Accordingly, it is hereby **ORDERED** that:

1.   All relief requested in petitioner's federal habeas corpus petition, filed in this Court on April 10, 2007, docket entry no. 4, is **DENIED.**

2.   All other pending motions are **DISMISSED** AS MOOT.

3.   Petitioner is **DENIED** a Certificate of Appealability.

4.   The Clerk shall prepare and enter a Judgment in conformity with this Memorandum Opinion and Order.

**SIGNED on October 5, 2007.**

*Nancy Stein Nowak*

**NANCY STEIN NOWAK**
**UNITED STATES MAGISTRATE JUDGE**